UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CODY ALLEN AYERS, | ) |
|     Petitioner, | ) |
| v. | )    No. 2:21-CV-00188-JRG-CRW |
| UNITED STATES OF AMERICA, | ) |
|     Respondent. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Cody Allen Ayers' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], Mr. Ayers' Memorandum of Points and Authorities in Support [Doc. 1-1], the United States' Response in Opposition [Doc. 4], and Mr. Ayers' Reply [Doc. 10]. For the reasons herein, the Court will deny Mr. Ayers' motion.

### I.    BACKGROUND

In 2019, a federal grand jury indicted Mr. Ayers on charges of sexually exploiting a minor and charges of distributing and possessing child pornography. [Indictment, Doc. 3, at 1–3, No. 2019-CR-00017-1-JRG-CRW]. He entered into a plea agreement with the United States and pleaded guilty to one count of using or attempting to use a facility of interstate commerce to persuade, induce, entice, or coerce a child to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). [Plea Agreement, Doc. 40, at 1, No. 2019-CR-00017-1-JRG-CRW]. In the plea agreement, he consented to a waiver provision in which he waived his right to collaterally attack his conviction or sentence under 28 U.S.C. § 2255, with the exception that he could pursue

claims for prosecutorial misconduct and ineffective assistance of counsel. [*Id.* at 8]. The plea agreement's factual basis states:

> On or about, November 29, 2018, via KIK messenger (a social media mobile device platform), the defendant utilized KIK username "grizzly273" initiated a conversation with an undercover agent (UC) with Homeland Security Investigations (HSI). The UC posed as a 14 year old female.
> The defendant and UC engaged in a conversation via KIK messaging. UC identified herself as a 14 year old girl to the defendant. During the conversation the defendant made the following statements to the UC: "I DON'T SHOW MY FACE IF U WAT TO SEE MY COCK ILL SHOW U IF I SEE YOUR BOOBS FIRST," and "I JUST WAT TO TRADE NUDES PLZ."
> The defendant sent one image depicting an adult male's penis. He then requested that the 14 year old girl help him masturbate. He again requested her to send nude images of herself.
> UC asked the defendant what kind of girls he liked. The defendant responded, "ALL GIRLS I LIKE I LOVE LOOKING AT GIRLS 11 TO 17 MOST." The defendant then sent a picture of an underage female with her breasts exposed with the phrase, "I do what Daddy wants" written on her bare chest. The defendant indicated to the UC that the picture is the type of image he likes. During the conversation the defendant sent a second image of child pornography. The image was of a prepubescent female with her breasts and vagina exposed.
> After sending the pornographic images the defendant stated to the UC posing as a 14 year old girl, "IF U PROMISE TO MAKE ME A VIDEO FOR ME ILL SHOW U A LINK OF YOUNG BOYS U MIGHT LIKE."
> During the conversation the defendant revealed that he obtained the images of the girls from Drop box and Megalinks (cloud storage services). The defendant stated he trades lots of videos and pictures.
> HSI obtained a search warrant of the defendant home and computers. Agents conducted a computer forensics analysis of the defendant's computers. Agents located additional images and videos of child pornography. Agents identified over 187 videos and 2,258 images indicative of child pornography. Agents located software, which is used to access the dark web and remain anonymous while using the internet.
> The defendant was advised of his Miranda rights and agreed to speak with agents. He admitted to using KIK under username grizzly273. He acknowledged that he sent images of child pornography to the UC. He obtained the said photos via DB Trade, a KIK group chat. He also admitted that he sent the photo of the male penis and that it was his penis.
> Via KIK, the defendant has had 100 to 200 conversations with underage girls. He spoke to the underage girls to see if the girls would send images of their breasts or videos of the girls masturbating.
> The defendant admitted he had images of child pornography saved on of his devices. He began looking at child pornography images about 4 years ago. He stated he used the images to trade for other child pornography. He sent 15 to 20 images

2

> of underage girls to the group chats. Some of the videos were of underage girls having sex with adult males.
>
> The defendant agrees that computers are a facility of interstate commerce and the internet is a means of interstate commerce.
>
> The defendant agrees and stipulates that the above mentioned videos and images of child pornography meet the definition of child pornography pursuant to Title 18, United States Code § 2256(8).

[*Id.* at 3–4].

The Court sentenced Mr. Ayers to 120 months' imprisonment. [J., Doc. 58, at 2, No. 2019-CR-00017-1-JRG-CRW]. He did not appeal his sentence but has now filed a motion for post-conviction relief under § 2255. The United States opposes his motion. Having carefully considered Mr. Ayers' motion and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The legal standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our

3

adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

"A prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). To obtain relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the [underlying] proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. To discharge this burden, a petitioner must allege sufficient facts showing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without

4

supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

### III. ANALYSIS

Again, the Court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction," 28 U.S.C. § 2255(b), and Mr. Ayers, in challenging his conviction and sentence, argues that the Court lacked jurisdiction over the charges against him and that the United States lacked the authority to prosecute him. *See* [Pet'r's Mot. at 4, 5, 7 (claiming that the Court "lacked subject-matter jurisdiction over [his] conduct," that "the Government has no business, or constitutional authority, to enforce its own federal criminal laws," and that "[t]he 'judicial power' of the United States does not embrace criminal cases"). In response, the United States argues, among other things, that Mr. Ayers' claims are meritless and that the waiver provision in his plea agreement bars them. [United States' Resp. at 5–6].

Mr. Ayers' contention that the Court was without subject-matter jurisdiction over the underlying criminal proceedings is fallacious. The Court properly exercised jurisdiction over the charges against Mr. Ayers under 18 U.S.C. § 3231, which grants federal district courts "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231; *see United States v. Russell*, 30 F. App'x 348, 351 (6th Cir. 2002) ("Federal courts have exclusive jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231 and the permission of the states is not a prerequisite to exercise that jurisdiction." (citations omitted)); *see also Gordon v. United States*, No. 21-1018, 2021 WL

5

8084491, *2 (6th Cir. June 14, 2021) ("[The petitioner's] claims are inherently frivolous. [He] had committed federal crimes which, by definition, were subject to federal prosecution . . . . and federal district courts have jurisdiction over federal crimes." (citing 18 U.S.C. § 3231)); *United States v. Hernandez*, 330 F.3d 964, 977–78 (7th Cir. 2003) (declaring that "18 U.S.C. § 3231 confers jurisdiction on district courts to try charges framed by federal indictments, and, as we have repeatedly held, 'district judges *always* have subject-matter jurisdiction based on *any* indictment purporting to charge a violation of federal criminal law'" (quotation omitted)).

Mr. Ayers' assertion that the United States lacked authority to prosecute him is equally fallacious. *See* 28 U.S.C. § 547(1) (stating that "each United States attorney, within his district, shall . . . prosecute for all offenses against the United States"); *see also id.* § 515(a) (stating that an Assistant United States Attorney may "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings"). In alleging that the United States "has no business, or constitutional authority," to prosecute him, [Petr's Mot. at 5], Mr. Ayers appears to believe that the United States was without standing to pursue his prosecution, *see* [Pet'r's Mem. at 29 (contending that the United States did not suffer an injury in fact)], but "an injury to the United States . . . aris[es] from violation of its laws (which suffices to support a criminal lawsuit by the Government)," *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (citations omitted). And Mr. Ayers, during his plea colloquy, admitted—under oath—that he was pleading guilty because he had in fact violated the law of the United States, namely 18 U.S.C. § 2422(b), and he does not claim that his plea agreement is invalid because he entered into it unknowingly or involuntarily. *See Luster v. United States*, 168 F.3d 913, 916 (6th Cir. 1999) ("[The defendant's] plea serves as an admission that he is not innocent of the crimes charged." (citation omitted)).

6

In maintaining that the Court and the United States acted without jurisdiction in the underlying criminal proceedings, Mr. Ayers, more specifically, invokes the Commerce Clause, which empowers Congress to "regulate Commerce . . . among the several states." U.S. Const., Art. I, § 8, cl. 3. Under the Commerce Clause, Congress has the authority to regulate three categories of conduct: (1) "use of the channels of interstate commerce," (2) "instrumentalities of interstate commerce, or persons or things in interstate commerce," and (3) "activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (citations omitted). Congress' authority under the Commerce Clause, however, "is not without effective bounds" or "'outer limits'" and "may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local.'" *United States v. Morrison*, 529 U.S. 598, 608 (2000) (citation, quotation, and footnote omitted). Mr. Ayers contends that he is immune from prosecution because (1) "[his] conduct was strictly committed within the state" and does not constitute interstate commerce, and the Commerce Clause, therefore, precludes Congress from criminalizing it under § 2422(b) and (2) § 2422(b) violates the Commerce Clause because it impedes the flow of commerce—presumably pornography—across state lines and, therefore, "does exactly what the Commerce Clause is supposed to prevent." [Pet'r's Mot. at 4]; *see* [Pet'r's Mem. at 16 (citing a "lack of jurisdiction of the government to enforce federal criminal laws within the sovereign states")].

Mr. Ayers' arguments read as an as-applied challenge to § 2422(b)'s constitutionality under the Commerce Clause. *Compare* [Pet'r's Mem. at 19, 22 (contending that "[t]he present case 'make[s] a substantial showing of the denial of [many] constitutional right[s]'" and "no amount of congressional factfinding can save 18 U.S.C. § 2422 from being struck down as

7

unconstitutional" (first alteration added)), *with United States v. Ray*, 189 F. App'x 436, 446–47 (6th Cir. 2006) ("[The defendant] argues that [the federal child-pornography statutes] are unconstitutional as applied to his case, because he argues that the federal criminalization of his activities exceeds Congress's Commerce Clause powers."), *and United States v. Andrews*, 383 F.3d 374, 376–77 (6th Cir. 2004) ("[The defendant] does not argue that § 2251(b) is facially unconstitutional, instead contending that it is unconstitutional under the Commerce Clause as applied to him because his activities did not substantially relate to interstate commerce."); *see generally Seling v. Young*, 531 U.S. 250, 271 (2001) (Thomas, J., concurring) ("Typically an 'as-applied' challenge is a claim that a statute, '*by its own terms*, infringe[s] constitutional freedoms in the circumstances of [a] particular case.'" (quotation omitted)).

Mr. Ayers' arguments are meritless. *Cf. United States v. Bowers*, 594 F.3d 522, 524 (6th Cir. 2010) ("This case requires us to address the continued viability of an as-applied Commerce Clause challenge to a child-pornography conviction . . . . [The defendant's] claim that his wholly intrastate, homemade child pornography falls outside the purview of congressional legislative power is meritless."); *Ray*, 189 F. App'x at 447 ("We have held on at least three occasions that the federal child pornography statutes are constitutional as applied, even though the defendants in those cases engaged in behavior that was arguably local in nature."); *see Gordon*, 2021 WL 8084491 at *1, 2 (rejecting the petitioner's argument that "the Commerce Clause did not authorize Congress to enact" § 2422(b) (citing *United States v. Tykorsky*, 446 F.3d 458, 470, 472–73 (3d Cir. 2006))); *Fox v. United States*, No. 2:16-cv-02017-JTF-cgc, 2018 WL 11476062, at *9 (W.D. Tenn. June 13, 2018) (rejecting the petitioner's argument that § 2422(b) "exceed[s] the Congressional intent for regulations of interstate commerce under the Commerce Clause").

8

But even if Mr. Ayers' claims were merit-worthy, they would not entitle him to relief because the waiver provision in his plea agreement, as the United States correctly argues, forecloses them. For a waiver provision to be valid, a defendant must simply enter into it knowingly and voluntarily. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *see In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) ("[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." (citations omitted)). Mr. Ayers does not allege that he entered into his plea agreement, or more specifically the waiver provision, unknowingly or involuntarily. His claims therefore fail not only because they have no merit but also because the waiver provision bars them, and he is therefore not entitled to the extraordinary remedy of § 2255 relief.

Lastly, the Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. Ayers to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Ayers' claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. Ayers.

### IV. CONCLUSION

As the petitioner under § 2255, Mr. Ayers fails to meet his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect

9

resulted in either a complete miscarriage of justice or an egregious error. His Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is therefore **DENIED**. All outstanding motions are **DENIED as moot**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE